# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMIA CABILOCAN SULAIMAN and MOHARIA SAWMANG CABILOCAN,<br><br>Plaintiff,<br><br>v.<br><br>YOUSEF LARAM and MIRIAM LARAM,<br><br>Defendants. | **Civil Action No.:** 1:16-CV-8182-CM |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR A MORE DEFINITIVE STATEMENT, AND MOTION TO STRIKE

Richard F. Levy
Joshua H. Rubin
Daniel A. Johnson (*pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 909-0894

*Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................... 1

RESPONSE TO DEFENDANTS' STATEMENT OF FACTS ................................... 3

ARGUMENT ...................................................................................................... 7

I.    Plaintiffs' Complaint Is Not So Excessively Vague and Ambiguous As To Be Unintelligible, And Thus Neither Should Be Dismissed Nor Re-Pleaded. ...................... 7

      A.    Plaintiffs Adequately Pleaded Their Trafficking Victims Protection Act Claims in Their First, Second, and Third Claims for Relief. .................................. 8

      B.    Plaintiffs Adequately Pleaded Their Labor Law Claims in Their Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief. ........................................... 10

      C.    Plaintiffs Adequately Pleaded Their Breach of Contract Claim in Their Ninth Claim for Relief. ....................................................................... 12

      D.    Plaintiffs Adequately Pleaded Their Quantum Meruit Claim in Their Tenth Claim for Relief. ....................................................................... 14

      E.    Plaintiffs Adequately Pleaded Fraud in Their Eleventh Claim for Relief. ........... 14

      F.    Plaintiffs Adequately Pleaded Conversion in Their Twelfth Claim for Relief. ................................................................................................ 16

      G.    Plaintiffs Adequately Pleaded Intentional Infliction of Emotional Distress in Their Thirteenth Claim for Relief ....................................................... 17

      H.    Plaintiffs Adequately Pleaded Negligent Infliction of Emotional Distress in Their Fourteenth Claim for Relief ...................................................... 19

II.    It Is Unnecessary for Plaintiffs to Re-plead Their Complaint, and No Allegations Should be Stricken as Immaterial or Scandalous............................................ 20

CONCLUSION.................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allyn v. Rockland Cty.*,
   No. 12 CV 5022 VB, 2012 WL 5992735 (S.D.N.Y. Nov. 8, 2012) ...........................9, 10, 17

*Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*,
   944 F. Supp. 240 (S.D.N.Y. 1996) ...................................................................................21

*AM Logistics Inc. v. Sorbee Int'l LLC*,
   No. 13-2876, 2014 WL 99451 (E.D. Pa. Jan. 9, 2014) ......................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................8

*Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals Inc.*,
   No. CV13-5704 CAS EX, 2013 WL 6572573 (C.D. Cal. Dec. 13, 2013) ..........................13

*Bonner v. Guccione*,
   916 F. Supp. 271 (S.D.N.Y. 1996) ....................................................................................18

*Content Guard Holdings, Inc. v. Google Inc.*,
   No. 2:14-CV-61-JRG, 2015 WL 1432208 (E.D. Tex. Mar. 30, 2015) ...........................11, 12

*CoStar Realty Info., Inc. v. Field*,
   612 F. Supp. 2d 660 (D. Md. 2009) .....................................................................................7

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*,
   15-CV-2044 (AJN), 2016 WL 205445 (S.D.N.Y. Jan. 15, 2016) .........................................20

*Fernandez v. Chertoff*,
   471 F.3d 45 (2d Cir. 2006) ................................................................................................15

*Franco v. Diaz*,
   51 F. Supp. 3d 235 (E.D.N.Y. 2014) ................................................................................20

*Frontier Contracting, Inc. v. Allen Eng'g Contractor, Inc.*,
   No. CV F 11-1590 LJO DLB, 2012 WL 485116 (E.D. Cal. Feb. 14, 2012) .........................13

*Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*,
   211 F.R.D. 71 (E.D.N.Y. 2002) ........................................................................................13

*Guobadia v. Irowa*,
   103 F. Supp. 3d 325 (E.D.N.Y. 2015) ..............................................................................19

*Guzman v. Concavage Marine Constr. Inc.*,
    176 F. Supp. 3d 330 (S.D.N.Y. 2016)...........................................................................20, 22

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013).......................................................................................8, 12

*In re European Rail Pass Antitrust Litig.*,
    166 F. Supp. 2d 836 (S.D.N.Y. 2001)..................................................................................7

*In re Fosamax Prod. Liab. Litig.*,
    No. 06 MD 1789 (JFK), 2013 WL 6669706 (S.D.N.Y. Dec. 18, 2013)...................................8

*John J. Kirlin, Inc. v. Conopoc, Inc.*,
    No. 94 CIV 2675 (AGS), 1995 WL 15468 (S.D.N.Y. Jan. 17, 1995).....................................13

*Kehr v. Yamaha Motor Corporation, U.S.A.*,
    596 F. Supp. 2d 821 (S.D.N.Y. 2008)................................................................................22

*Keith v. J.D. Byrider Sys., LLC*,
    No. 3:14-CV-1317-D, 2015 WL 3539555 (N.D. Tex. June 5, 2015)....................................14

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) .........................................................................................8

*Klein v. Metro. Child Servs., Inc.*,
    954 N.Y.S.2d 559 (N.Y. App. Div. 2012) ...........................................................................18

*Kuebel v. Black & Decker Inc.*,
    643 F.3d 352 (2d Cir. 2011)............................................................................................11

*Lipenga v. Kambalame*,
    No. GJH-14-3980, 2016 WL 6662252 (D. Md. Nov. 9, 2016) ............................................15

*Manliguez v. Joseph*,
    226 F. Supp. 2d 377 (E.D.N.Y. 2002) ...............................................................................17

*Paloian v. F.D.I.C.*,
    No. 11 C 50017, 2011 WL 5325562 (N.D. Ill. Nov. 2, 2011)..............................................12

*Patrick v. LeFevre*,
    745 F.2d 153 (2d Cir. 1984).............................................................................................9

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F. Supp. 2d 439 (S.D.N.Y. 2005)..................................................................................8

*Rana v. Islam*,
    305 F.R.D. 53 (S.D.N.Y. 2015) ........................................................................................15

*Reich v. Waldbaum, Inc.*,
    52 F.3d 35 (2d Cir. 1995) ................................................................................11

*Rentas v. Ruffin*,
    816 F.3d 214 (2d Cir. 2016) .............................................................................18

*Resolution Trust Corp. v. 260-68 Elizabeth St. Owners Assocs.*,
    No. 92 Civ. 4756 (SWK), 1997 WL 202109 (S.D.N.Y. Apr. 24, 1997) .................8

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014)...........................................................20, 21

*Schlaifer Nance & Co v. Estate of Warhol*,
    119 F. 3d 91 (2d Cir. 1997)..............................................................................15

*Simmons v. Abruzzo*,
    49 F.3d 83 (2d Cir. 1995) ..................................................................................7

*Sunshine Cellular v. Vanguard Cellular Sys., Inc.*,
    810 F. Supp. 486 (S.D.N.Y. 1992).....................................................................20

*U.S. for Use of Argyle Cut Stone Co., Inc. v. Paschen Contractors, Inc.*,
    664 F. Supp. 298 (N.D. Ill. 1987) ......................................................................14

*Valdez v. Celerity Logistics, Inc.*,
    999 F. Supp. 2d 936 (N.D. Tex. 2014) ..............................................................10

*Williams v. Rosenblatt Sec., Inc.*,
    136 F. Supp. 3d 593 (S.D.N.Y. 2015)..........................................................21, 22

**STATUTES**

29 U.S.C.A. § 211(c) (West 2017).............................................................................12

Trafficking Victims Protection Act, 18 U.S.C. § 1589 *et seq.* .......................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ................................................................................1

Federal Rule of Civil Procedure 8(a) ............................................................................7

Federal Rule of Civil Procedure 8(a)(2) ........................................................................7

Federal Rule of Civil Procedure 9(b) ..........................................................................15

Federal Rule of Civil Procedure 10(b) ..........................................................................7

Federal Rule of Civil Procedure 12(b)(6) ......................................................................8

Federal Rule of Civil Procedure 12(e) ................................................................. passim

N.Y. C.P.L.R. § 215(3) ...............................................................................................17

# INTRODUCTION

Plaintiffs Normia Sulaiman and Moharia Cabilocan filed a detailed, twenty-six page, one hundred and forty-six paragraph Complaint alleging that Defendants Yousef Laram and Miriam Laram trafficked them to the United States, held them in forced labor and slavery-like conditions, threatened them with deportation and blacklisting, physically assaulted them, and denied them the livable wages provided in their employment agreements.  Defendants have filed a motion that i) ignores the basic pleading structure set out under the Federal Rules and ii) improperly seeks to shift onto the plaintiffs a burden of proof appropriate only after the conclusion of discovery, not before it.  Defendants' motion serves no purpose other than to delay this litigation, and this Court should deny it in its entirety so the parties can move expeditiously to the discovery that Defendants' motion reveals is necessary.[1]

Defendants complain that certain allegations in the Complaint are too vague.  But, the allegations in the Complaint easily satisfy the requirement under Federal Rule of Civil Procedure 8 that a complaint provide a "short and plain statement of the claim."  Indeed, Defendants' quibbles with the Complaint reflect that each claim has been pleaded more than adequately to provide proper notice.  Defendants do not argue that they are unable to discern any of the fourteen causes of action enumerated in the Complaint; their motion accurately identifies each one.  Rather, Defendants seek additional information regarding 1) the precise geographic location of certain acts; 2) specific dates of payments rendered; and 3) details from contracts in Defendants' possession.  Not only are none of these details necessary to put Defendants on

---

[1] Defendants have hardly been expeditious in their conduct of this litigation to date.  Service on Defendants was made on December 6, 2016; the instant motion was not filed until February 16, 2017.

notice of the claims against them, they also are precisely the sorts of details that are uniquely within Defendants' possession and knowledge, and which Ms. Sulaiman and Ms. Cabilocan can discern only through discovery.  For example:

- The Complaint does not attach every contract referenced therein because Defendants confiscated certain of these contracts, and they are not in Plaintiffs' possession; Plaintiffs look forward to receiving the remaining contracts pursuant to document requests in discovery.

- The Complaint does not state the exact dates when Defendants paid certain wages because Defendants provided no pay stubs to Ms. Sulaiman or Ms. Cabilocan; they look forward to receiving more detailed information and records regarding their wages through discovery.

- And, the Complaint refers at times to broader time periods because Defendants' egregious conduct toward Ms. Sulaiman and Ms. Cabilocan disoriented them, rendering it difficult for them to recall the exact dates when certain events occurred; discovery will narrow these time frames as well.

In sum, Defendants' motion is a clarion call for the need to proceed immediately to discovery and not get bogged down in unnecessary motions practice.

As to Defendants' argument that certain allegations should be stricken, Defendants bear a heavy burden to show that allegations in a complaint should be stricken: they must show that they are prejudiced by impertinent background material that has absolutely no bearing on the claims at issue.  Defendants cannot clear that high bar here.  Each allegation Defendants challenge is necessary to provide the full context of Defendants' egregious conduct toward Ms. Sulaiman and Ms. Cabilocan.  Background information regarding Defendants' treatment of Ms.

Sulaiman and Ms. Cabilocan in Qatar (and the treatment by Defendants' family members) is critical to provide context regarding the coercion at the heart of their employment relationship. These are not extraneous facts inserted for no reason but to prejudice Defendants, and Defendants' request to strike them should therefore be denied.

## RESPONSE TO DEFENDANTS' STATEMENT OF FACTS[2]

As alleged in the Complaint, Defendants recruited and trafficked to the United States Ms. Sulaiman, and subjected her to abusive treatment and threats.  (Compl. ¶¶ 10-23, 29-31.) Specifically, "[i]n 2009, Ms. Sulaiman began working as a housekeeper and nanny for Defendants in their home in Qatar."  (Compl. ¶ 10.)  While there, Ms. Sulaiman observed an incident where Defendants summarily fired a domestic worker for allegedly violating house rules.  (*Id.* ¶ 11.)  Most pertinently, the Complaint alleges that Ms. Laram told Ms. Sulaiman that disobeying Defendants had severe consequences: "Ms. Laram said that her family had blacklisted the worker from all domestic worker agencies in the Philippines, so that the worker would never find work as a housekeeper again."  (*Id.* ¶ 11.)   The Complaint also alleges that once in the United States, Ms. Sulaiman was compelled to return to the Philippines periodically to renew her visa, and that while abroad Defendants contacted her family to pressure Ms. Sulaiman to return to the United States to resume working for Defendants.  (Compl. ¶ 33.) Further, the Complaint alleges that Defendants recruited and trafficked Ms. Cabilocan to the United States in 2014 and 2015, and subjected her to the same abusive treatment and threats as they did Ms. Sulaiman.  (*Id.* ¶¶ 24-31.)  At all relevant times in the United States, Mr. Laram

---

2  "D. Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, or, in the Alternative, for a More Definitive Statement, and Motion to Strike, dated February 16, 2017.  (Dkt. 16.)  "Compl." refers to the Complaint filed with this Court on October 19, 2016.  (Dkt. 1.)  "Ex. __" refers to the corresponding exhibit attached to the Complaint.

served as the First Secretary and Deputy Permanent Representative of the Permanent Mission of the State of Qatar to the United Nations, and in this capacity he spoke out publicly against human trafficking.  (*Id.* ¶¶ 9, 31.)

Regarding these allegations, Defendants make a number of incorrect suggestions. Contrary to Defendants' argument, there is no reading of the Complaint that could lead to the conclusion that Defendants were not involved in the blacklisting threats.  The Complaint's allegation that "[t]he Defendants also caused Ms. Sulaiman and Ms. Cabilocan to believe that they would be blacklisted by employment agencies in Philippines" (*id.* ¶ 61) in no way implies that it was "not the employer or employer's family" that was responsible for the blacklisting, as Defendants seek to argue.  (D. Mem. at 2.)  In any event, Plaintiffs are not "blur[ring] the distinction" between actions by Defendants and others (*id.*): the allegation is merely about what *Ms. Laram said* (i.e, that "her family had [the domestic worker] blacklisted" (Compl. ¶ 11)), and the truth of this allegation does not hinge on what anyone in the Laram family or the employment agencies actually did or did not do.

Defendants improperly challenge the blacklisting threat allegation in other ways as well. First, Defendants complain that Plaintiffs are "indefinite . . . about where this 'reminder' occurred," falsely implying that only one such "reminder" is alleged.  (D. Mem. at 3.)  In fact, Plaintiffs allege that Ms. Laram "reminded" Ms. Sulaiman of the incident "often," implying multiple reminders occurred throughout her employment, including in the United States. (Compl. ¶ 11.)  Second, Defendants take issue with the allegation that, "[a]s a result of these repeated threats of deportation and blacklisting, Ms. Sulaiman believed she was compelled to comply with the Laram family demands."  (Compl. ¶ 12.)  Defendants complain that Plaintiffs do not specify "what these 'demands' were, when they were made, and where they were delivered" (D. Mem. at

3), but this is incorrect:  the Complaint alleges among other things that in Qatar Ms. Laram demanded that Ms. Sulaiman work in the United States (Compl. ¶ 14), and that once in the United States, Ms. Laram demanded that Ms. Sulaiman surrender her passport (*id.* ¶ 19), never leave the New York apartment unescorted (*id.* ¶ 21), find another worker from the Philippines (*id.* ¶ 24), and refrain from leaving her employment in New York despite her illegally low pay (*id.* ¶ 18), inhumanly long hours (*id.*), and abominable living conditions (*id.* ¶ 20).  The Complaint also alleges that Defendants made these demands of Ms. Cabilocan as well, (*id.* ¶¶ 29-31), and that both Ms. Sulaiman and Ms. Cabilocan were required to perform tasks to which they had not contractually agreed, including childcare and meal preparation (*id.* ¶ 115).

Next, Defendants complain that the Complaint does "not indicate specifically which contract (or contracts) the defendants allegedly submitted to the U.S. Embassy in Qatar" (D. Mem. at 4 (citing Compl. ¶ 15)), but Plaintiffs are obviously referring to the 2011 contract that was referred to in the *precise* paragraph Defendants cite.  (*See* Compl. ¶ 15.)  Likewise, Defendants complain that Plaintiffs attached only the 2013 contact, not the 2011 contract.  (D. Mem. at 3.)  The 2011 contract is not attached to the Complaint because Plaintiffs do not possess a copy.  In any event, as Plaintiffs' former employers, Defendants should have a copy of the 2011 contract on file and know what it says.

Plaintiffs allege that "Ms. Sulaiman's living conditions *in the New York* apartment were abominable" (Compl. ¶ 20 (emphasis added)), and further allege that "*[o]nce in New York*, the Defendants' treatment of Ms. Cabilocan was appalling and inhumane."  (*Id.* ¶ 29 (emphasis added)).  As a few examples, Plaintiffs note that they were forced to sleep in a pantry (*id.* ¶¶ 20, 29), were not allowed to leave the apartment unescorted (*id.* ¶¶ 21, 29), were given rotten food to eat (*id.* ¶ 29), were paid an illegally low salary (*id.* ¶¶ 18, 29), were forced to work illegally long

hours (*id.*), were called "slave" and "animal" (*id.* ¶¶ 20, 29), and were slapped if they disobeyed (*id.*).  Additionally, Ms. Sulaiman was barred from receiving prompt medical care for conditions she developed in response to the inhumane living and working conditions.  (Compl. ¶¶ 22–23.)  Remarkably, Defendants contend that "it is unclear from the Complaint where or when these incidents occurred," despite the fact that the cited paragraphs explicitly state the events happened in "New York."  (D. Mem at 3 (citing Compl. ¶¶ 20, 29).)

In their Complaint, Plaintiffs allege that "Ms. Laram prohibited Ms. Sulaiman from leaving the New York Residence unescorted, and gave her no key.  The front door was always locked, and even if she could leave, she would have nowhere to go."  (Compl. ¶ 21.)  Defendants express confusion over whether keeping the door locked is alleged to be actionable. (D. Mem. at 5.)  Because Plaintiffs did not have keys to the apartment (Compl. ¶ 21), and the apartment's door was always kept locked (*id.*), they could not return to the apartment once they left; thus they were effectively barred from leaving their place of work even if they were not technically locked in the apartment.

Ms. Sulaiman and Ms. Cabilocan ultimately devised a plan to escape their oppressive circumstances despite their lack of familiarity with their surroundings.[3]  (Compl. ¶¶ 34-35.)  Even after they escaped, Defendants retained custody of Ms. Cabilocan's passport.  (*Id.* ¶¶ 30, 34-35.)   Defendants sought to compel Ms. Sulaiman and Ms. Cabilocan to return by making phone calls to Ms. Cabilocan's parents threatening to track them down and have them jailed and deported.  (*Id.* ¶ 36.)  The Complaint alleges that Ms. Sulaiman and Ms. Cabilocan have been psychologically traumatized by Defendants' ongoing and egregious mistreatment.  (*Id.* ¶ 51.)

---

[3] Immediately after their escape, Plaintiffs were taken in by San Lorenzo Church.  (Compl. ¶ 35.)

<u>**ARGUMENT**</u>

**I.      Plaintiffs' Complaint Is Not So Excessively Vague and Ambiguous As To Be Unintelligible, And Thus Neither Should Be Dismissed Nor Re-Pleaded.**

"The function of pleadings under the Federal Rules is to give fair notice of the claim asserted." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citation omitted).  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Accordingly, a motion for a more definite statement under Federal Rule of Civil Procedure 12(e) "should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001) (quotes omitted) (denying Rule 12(e) motion).  In addition, the motion must "point out the defects complained of and the details desired."  Fed. R. Civ. Proc. 12(e).  "[I]t is well settled that such motions generally are disfavored because of their dilatory effect."  *European Rail*, 166 F. Supp. 2d at 844 (quotes omitted).  Rule 12(e) "is designed to strike at unintelligibility rather than want of detail and . . . allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement."  *Id.*

Dismissal for failure to comply with Federal Rule of Civil Procedure 8(a) must clear an even higher bar and "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons*, 49 F.3d at 86.  The same standard applies for dismissal for failure to comply with Federal Rule of Civil Procedure 10(b).  *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 673 n.7 (D. Md. 2009) (holding that even if a complaint incorporates by reference each preceding paragraph within each count, it should not be dismissed unless the complaint is "so

confusing as to fail to state a claim, or recognize the elements of a cause of action within each Count").[4]

Finally, as the Court is well aware, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only if the complaint lacks "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is axiomatic that the Court must draw all reasonable inferences in Plaintiffs' favor during the pleading stage.  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### A.   Plaintiffs Adequately Pleaded Their Trafficking Victims Protection Act Claims in Their First, Second, and Third Claims for Relief.

Contrary to Defendants' contentions, there is no need for dismissal or clarification of Plaintiffs' three claims for relief under the Trafficking Victims Protection Act, 18 U.S.C. § 1589 *et seq.*  With regard to these claims, Defendants' principal argument is that they do not specify whether particular conduct occurred in Qatar or the United States, and that only conduct that occurred in the United States is actionable.

---

[4] With regard to their Rule 12(e) argument, Defendants have failed to identify any cases that are factually on point, and the cases they cite for general principles bear no relevance to the facts alleged here.  Regarding *In re Fosamax Prod. Liab. Litig.*, No. 06 MD 1789 (JFK), 2013 WL 6669706, at *4 (S.D.N.Y. Dec. 18, 2013), the court generally denied the Rule 12(e) motion, and granted it only to require the pleading of the general timeframe of the alleged harms, which Plaintiffs have already done here.  In *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 445 (S.D.N.Y. 2005), the court granted a Rule 12(e) motion with regard to a false advertising claim only because the plaintiffs failed to identify any actual advertisements, a circumstance that is not present here.  In *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), the court granted the Rule 12(e) motion with regard to a copyright claim only because the plaintiff failed to allege that he owned the relevant copyrights and that they were properly registered, another circumstance not relevant here.  Finally, in *Resolution Trust Corp. v. 260-68 Elizabeth St. Owners Assocs.*, No. 92 Civ. 4756 (SWK), 1997 WL 202109, at *5 (S.D.N.Y. Apr. 24, 1997), the court granted a Rule 12(e) motion as to a claim for "contribution and/or indemnification" because it was "so vague" that it rendered the defendants "incapable of framing a responsive pleading," but Plaintiffs do not seek contribution or indemnification here.

There is no need to resolve at the pleading stage the precise location of the conduct complained of because "in a civil rights complaint, a plaintiff is not required to make detailed factual allegations[.]" *Allyn v. Rockland Cty.*, No. 12 CV 5022 VB, 2012 WL 5992735, at *2 (S.D.N.Y. Nov. 8, 2012). In *Allyn*, the defendants argued that certain ambiguities in the complaint made it "impossible for them to assert a statute of limitations defense," but the court rejected that argument as irrelevant for purposes of a Rule 12(e) motion: "Nothing prevents defendants from pleading a statute of limitations defense in their answer, even in the absence of a more detailed complaint," and any ambiguities could be resolved "through the discovery process." *Id.* at *3. As in *Allyn,* Defendants here are free in their answer simply to deny liability to the extent that acts occurred in Qatar. Whether Defendants have a valid defense as to the extraterritoriality of certain allegations, that issue should be explored through and resolved after discovery, not at the outset of the action through a premature trial by pleadings.

Moreover, it is simply false that Plaintiffs fail to distinguish between the alleged conduct of Defendants and third parties. (D. Mem. at 10.) As noted above, Defendants are capable of pleading an answer to the allegation that Ms. Laram threatened the Plaintiffs with blacklisting regardless of whether the Defendants or an agency effectuated the blacklisting.

Finally, Defendants express confusion over why Ms. Sulaiman would return to work for the Laram family in the United States after trips to the Philippines to renew her visa. (D. Mem. at 5-6.) Of course, especially at the pleadings stage, and even at summary judgment, the court need not address the issue of Ms. Sulaiman's motivation for continuing to work for Defendants: "This Court has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable[.]" *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984).

Nevertheless, Ms. Sulaiman's motivation to return is discussed throughout the Complaint: she feared being blacklisted. (*E.g.*, Compl. ¶¶ 11–12.) This intimidation was not subtle either: "Defendants also contacted Ms. Sulaiman's family in the Philippines repeatedly each time Ms. Sulaiman traveled to the Philippines, in order to pressure Ms. Sulaiman to return to Defendants' employ." (*Id.* ¶ 33.)

Thus, the Court should reject Defendants' request for a more definite statement, or for dismissal, as to the First, Second, and Third Claims for Relief.

### B.    Plaintiffs Adequately Pleaded Their Labor Law Claims in Their Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief.

Defendants are incorrect that further clarification or dismissal is warranted with regard to Plaintiffs' labor law claims. Defendants' principal contention here is again that the claims do not specify where or when each and every violation occurred. (D. Mem. at 11-12.) If Defendants have any genuine confusion, they are free to plead that they are not liable to the extent alleged violations occurred outside the United States or any other defenses they believe are applicable. *Cf. Allyn*, 2012 WL 5992735, at *3.

Courts have rejected motions under Rule 12(e) when premised on the notion that a labor law cause of action does not give exact specificity as to alleged violations. For example, in *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 946 (N.D. Tex. 2014), a successor-in-interest to the alleged employer moved for a more definite statement under Rule 12(e), requesting that "plaintiffs be required to plead when [the employer] allegedly employed them, whether plaintiffs were misclassified as independent contractors or as exempt under the FLSA, and when the alleged FLSA violations occurred." Rejecting this motion, the Court held that "[w]hen a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing

the plaintiff to provide a more definite statement is not warranted." *Id.* Applying that rule, the court held it was sufficient for the plaintiffs to allege there was some sort of "employer and/or joint employer" relationship, that the alleged employer "had control over Plaintiffs' work," and that "Plaintiffs were financially dependent on [the alleged employer]." *Id.* The Complaint here easily satisfies that pleading standard.

Defendants also complain that Plaintiffs "allege[] in [a] conclusory fashion" that Defendants violation of the FLSA was "willful." (D. Mem. at 10.) As noted above, however, Plaintiffs pleaded a variety of facts that support their claim that Defendants' FLSA violations were willful. "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted). Here, it appears from the March 25, 2013 speech Mr. Laram gave on human trafficking that Defendants actually knew their treatment of the Plaintiffs was illegal. (*See* Compl. ¶ 31.) Alternatively, Defendants can be found to have acted willfully because they did not pay Ms. Sulaiman and Ms. Cabilocan based on any discernable interpretation of the FLSA and instead simply disregarded the law altogether by paying them a mere $350 each month to work 18-hour days without days off. (Compl. ¶¶ 18, 29.) Courts have found that such conduct evinces "reckless disregard" of the FLSA. *See, e.g.*, *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995) (holding that defendant acted "willfully" because the law was clear and the defendant violated it anyway).

Moreover, the notice pleading standard does not require willfulness to be pleaded with specificity. For example, in *Content Guard Holdings, Inc. v. Google Inc.*, No. 2:14-CV-61-JRG, 2015 WL 1432208, at *4 (E.D. Tex. Mar. 30, 2015), the plaintiff accused Google of willfully infringing patents, and Google attempted to defend itself by asserting that "[t]he Complaint fails

11

to allege any facts in support of its wholly conclusory claim of willful infringement." In response, the court acknowledged that "ContentGuard only directly refers to willful infringement in one paragraph of its Complaint," but "there is significantly more to the allegations of ContentGuard's complaint than this one paragraph," and those other paragraphs were relevant to determining whether willfulness was alleged. *Id.* As in *Content Guard*, the Complaint here alleges facts regarding the Plaintiffs' arbitrary salary level (Compl. ¶¶ 18, 29) and Mr. Laram's speech on human trafficking (*id.* ¶ 31) that strongly suggest that Defendants' conduct was either knowingly willful or in reckless disregard of the FLSA.

### C. Plaintiffs Adequately Pleaded Their Breach of Contract Claim in Their Ninth Claim for Relief.

Defendants inaccurately claim that the Complaint does not identify the contracts at issue. (D. Mem. 12–13.) But the Complaint clearly identifies that Ms. Sulaiman entered into at least three relevant contracts: Ms. Sulaiman's 2011 contract described at Complaint ¶ 15; Ms. Sulaiman's 2013 contract at Ex. A; and Ms. Cabilocan's contract at Ex. B. As Defendants note, "[t]he allegations state that the contracts were for two-year terms subject to renewal" (D. Mem. at 13), so that "drawing all reasonable inferences in the plaintiff's favor," *Hogan*, 738 F.3d at 515, the natural inference is that Ms. Sulaiman also entered contracts in 2007 and 2009. As Plaintiffs' employers, Defendants are required by law to keep copies of these contracts on file (*e.g.*, 29 U.S.C.A. § 211(c) (West 2017)), and cannot plausibly claim to be confused about them.

Defendants make much of Plaintiffs' allegations that the contracts attached to the exhibits are "substantially similar" to the actual contracts. (D. Mem. at 4, 12–13, 16, 18, 22.) Plaintiffs are not required to attach copies of their contracts to a complaint, *Paloian v. F.D.I.C.*, No. 11 C 50017, 2011 WL 5325562, at *3 (N.D. Ill. Nov. 2, 2011), but Ms. Sulaiman and Ms. Cabilocan did so anyway for the sake of clarity. Indeed, courts have rejected the exact requests Defendants

12

make here.  For example, in *Greater N.Y. Auto. Dealers Ass'n v. Envtl. Sys. Testing, Inc.*, 211

F.R.D. 71, 77 (E.D.N.Y. 2002), the defendants filed a Rule 12(e) motion seeking for the plaintiff

to plead additional details, such as "identify[ing] the contracts or leases and the parties thereto

upon which each of their claims are based" and stating "the dates on which they entered in to

those contracts or leases."  Denying the motion, the court held that the plaintiffs did not need to

"provide specific details of each individual plaintiff's contract or lease agreement, date of the

agreement, or the contract or lease provisions allegedly breached."  *Id.; see also John J. Kirlin,*

*Inc. v. Conopoc, Inc.*, No. 94 CIV 2675 (AGS), 1995 WL 15468, at *4 (S.D.N.Y. Jan. 17, 1995)

(holding that complaint alleged sufficient detail where it alleged "a contract between [plaintiff

and defendant], that [plaintiff] performed its obligations under the Contract, that [defendant]

breached the Contract and that [plaintiff] suffered damages").

    To the extent Defendants desire additional detail, it is far more appropriate for them to

obtain it through discovery.  *See, e.g.*, *AM Logistics Inc. v. Sorbee Int'l*, LLC, No. 13-2876, 2014

WL 99451, at *2 (E.D. Pa. Jan. 9, 2014) ("Any additional details surrounding the agreement, the

terms, and the parties' intentions are appropriate for discovery."); *Bioriginal Food & Sci. Corp.*

*v. Biotab Nutraceuticals Inc.*, No. CV13-5704 CAS EX, 2013 WL 6572573, at *8 (C.D. Cal.

Dec. 13, 2013) ("If the detail sought by a motion for more definite statement is obtainable

through discovery, the motion should be denied."); *Frontier Contracting, Inc. v. Allen Eng'g*

*Contractor, Inc.*, No. CV F 11-1590 LJO DLB, 2012 WL 485116, at *8 (E.D. Cal. Feb. 14,

2012) ("This Court anticipates that discovery will resolve vagueness or ambiguity which

defendants claim to experience, including any as to price, subject matter, duration and

location.").

### D.     Plaintiffs Adequately Pleaded Their Quantum Meruit Claim in Their Tenth Claim for Relief.

Defendants also have no basis for claiming that Plaintiffs' quantum meruit claim should be clarified or otherwise dismissed.  Defendants argue that the Complaint does not "state the benefits . . . conferred" or "identify to whom the benefits accrued."  (D. Mem 13.)  In fact, however, Plaintiffs allege that "Ms. Sulaiman and Ms. Cabilocan performed significant work for Defendants that was outside the scope of Plaintiffs' valid and binding employment contract," and further alleged that "[t]his additional and unanticipated work included caring for children and preparing meals."  (Compl. ¶ 115.)  Defendants complain that the various other details are not provided but fail to cite a single case suggesting that Plaintiffs should be ordered to elaborate on their pleadings.  Regardless, courts have consistently denied Rule 12(e) motions requesting more detail about quantum meruit claims.  *See, e.g., U.S. for Use of Argyle Cut Stone Co., Inc. v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 303 (N.D. Ill. 1987) (holding that the single allegation that "[c]ommencing on or about June 20, 1985, in reliance upon assertions made by Thorlief regarding materials, labor and payment therefor, Argyle began providing labor and material to the Site consistent with Thorlief's requirements" was sufficient); *see also Keith v. J.D. Byrider Sys.*, LLC, No. 3:14-CV-1317-D, 2015 WL 3539555, at *13 (N.D. Tex. June 5, 2015) (denying Rule 12(e) motion for a more definite statement of plaintiff's quantum meruit claim).  Read in the context of the Complaint as a whole, Plaintiffs' allegations are much more detailed, and thus require no further elaboration.

### E.     Plaintiffs Adequately Pleaded Fraud in Their Eleventh Claim for Relief.

Defendants fail to justify their assertion that Plaintiffs' fraud claim should be clarified or dismissed.  To make out a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with

an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff. *Schlaifer Nance & Co v. Estate of Warhol*, 119 F. 3d 91, 98 (2d Cir. 1997).  In alleging that Defendants undertook a scheme to induce Plaintiffs to move to the United States and labor under deplorable conditions, despite representing to Plaintiffs at the outset that they would be treated fairly, Plaintiffs have stated a claim for fraud.  This claim encompasses more than the contractual terms entered into by the parties, and therefore is not duplicative of the breach of contract claim.  Moreover, at this stage in the litigation, when all reasonable inferences must be drawn in Plaintiffs' favor, *e.g.*, *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006), the Plaintiffs have adequately alleged fraud, even under the more exacting standards of Rule 9(b).

Courts have recognized common law fraud claims on similar facts in other cases involving human trafficking.  *See, e.g.*, *Rana v. Islam*, 305 F.R.D. 53, 58–59 (S.D.N.Y. 2015) (sustaining fraudulent misrepresentation claim on the basis of allegations that defendant would renew plaintiff's visa in the United States, and that defendant would allow plaintiff to have free time each day after plaintiff completed his job duties); *Lipenga v. Kambalame*, No. GJH-14-3980, 2016 WL 6662252, at *7 (D. Md. Nov. 9, 2016) (sustaining "intentional misrepresentation" claim upon allegations that defendant "knowingly made a series of false statements to [plaintiff] in order to induce her to sign documents and emigrate to the United States").  Courts have reached this conclusion even where there also existed a contract between the parties that set forth the key terms of the plaintiffs' employment, *Lipenga*, 2016 WL 6662252, at *8, and even where the complaint supplied only the "general time period" of the defendants' alleged misrepresentations, *Rana*, 305 F.R.D. at 58 (citing *Harris v. Wells*, 757 F. Supp. 171, 173 (D. Conn. 1991)).

Here, Plaintiffs have alleged that Defendants "knowingly and willingly lured Ms. Sulaiman and Ms. Cabilocan to work for them with false promises of domestic servant jobs at livable wages" in the United States. (Compl. ¶ 2.) They have identified specific misrepresentations made by Defendants that were designed to, and in fact did, induce Plaintiffs to move to the United States and enter Defendants' employ under false pretenses. (*Id.* ¶¶ 15–16, 26–28.) Plaintiffs relied on these representations; indeed, it is as a direct consequence of Defendants' promises that Plaintiffs moved to New York with them. (*Id.* ¶¶ 15, 28, 128.) Finally, there can be no doubt that Plaintiffs have properly alleged that they have been damaged by Defendants' misrepresentations. (*See* Compl. ¶¶ 23, 29, 58, 66, 72, 81, 91, 112, 129, 139, 144.) As to Defendants' contention that Ms. Sulaiman cannot have acted in reliance on Defendants' representations after mid-2013, and that Ms. Cabilocan cannot have relied on Defendants' representations at all (D. Mem. 17), that is a question of fact entirely inappropriate for resolution at this stage of the litigation. To the extent Defendants have any questions on this topic, they will have an opportunity to resolve them through discovery.

### F.    Plaintiffs Adequately Pleaded Conversion in Their Twelfth Claim for Relief.

Defendants incorrectly assert that Plaintiffs' claim for conversion should be clarified or dismissed. The claim alleges that "Defendants exercised unauthorized dominion and control over the passports, immigration documents, and other personal property of Ms. Sulaiman and Ms. Cabilocan, which interfered with and was in defiance of a their superior possessory rights." (Compl. ¶ 133.) The claim further alleges that "Defendants' conduct was willful and shocks the conscience." (*Id.* ¶ 134.)

Defendants argue that the Complaint "does not specify where and when the acts underlying the claim took place" (D. Mem. at 19), but in fact the relevant allegations could not be clearer that Defendants' "usual practice was immediate confiscation of passport documents."

16

(Compl. ¶ 34.)  For example, after Ms. Sulaiman first arrived in the United States, "Ms. Laram confiscated Ms. Sulaiman's passport, and refused to give it back to Ms. Sulaiman." (*Id.* ¶ 19.) Likewise, when Ms. Cabilocan arrived in the United States, Defendants also confiscated her passport.  (*Id.* ¶ 30.)  The Complaint further alleges that, as a result of this practice, Ms. Cabilocan's passport remained in Defendants' custody after she escaped the apartment.  (Compl. ¶ 30.)  *See Manliguez v. Joseph*, 226 F. Supp. 2d 377, 388 (E.D.N.Y. 2002) (holding that identifying "other property" in a complaint was sufficiently specific to state a conversion claim).

Contrary to Defendants' contentions, the conversion claim poses no statute of limitations issues.  Because Defendants never returned Ms. Cabilocan's passport, their conversion of her property continues to this day.  Because of Defendants' general policy of holding Plaintiffs' passports, their conversion of Ms. Sulaiman's passport would have ended just before her last trip to the Philippines in 2015 – well within the three-year limitation period.  In any event, it is inappropriate to use Rule 12(e) to obtain discovery for a statute of limitations defense.  *See Allyn*, 2012 WL 5992735, at *3.

### G.  Plaintiffs Adequately Pleaded Intentional Infliction of Emotional Distress in Their Thirteenth Claim for Relief.

Defendants argue that Plaintiffs' claim for intentional infliction of emotional distress ("IIED") must be dismissed because the conduct complained of occurred prior to the expiration of the applicable one-year statute of limitations, N.Y. C.P.L.R. § 215(3).  (D. Mem. at 20.) Contrary to Defendants' contention, their outrageous conduct did not end the moment Ms. Sulaiman and Ms. Cabilocan escaped in April 2015.  Rather, Plaintiffs have suffered ongoing harassment by Defendants in the form of calls to Ms. Cabilocan's parents.  (Compl. ¶ 36.)  As a result of Defendants' threats to "spread pictures of Ms. Sulaiman and Ms. Cabilocan around New York City and find them," and subsequently to have them "jailed and eventually deported" (*id.*),

17

the conduct giving rise to Plaintiffs' IIED claims and Plaintiffs' corresponding distress remains ongoing.

Under New York law, where an IIED claim involves "continuous tortious conduct and injury," the statute of limitations "does not begin to run until the conduct ceases." *Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016).  Consideration of the conduct that took place prior to one year before the Complaint was filed is proper because it is part of a continuous course of conduct on Defendants' part and gives weight to Defendants' subsequent threats.  *See Bonner v. Guccione*, 916 F. Supp. 271, 276 (S.D.N.Y. 1996).  Because IIED can result from a "course of conduct," the *Bonner* court held that it was inappropriate to "limit the fact-finder's perspective to only the final instances of such conduct and exclude consideration of those acts which may be critical to defining the character of the conduct but which may nonetheless fall outside the one year prior to the lawsuit."  *Id.* (citation omitted).

Moreover, Plaintiffs have adequately pleaded IIED, which requires alleging "(1) extreme and outrageous conduct; (2) the intent to cause, or the disregard of a substantial likelihood of causing, severe emotional distress; (3) causation; and (4) severe emotional distress." *Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562 (N.Y. App. Div. 2012) (citation omitted).  The Complaint alleges a host of extreme and outrageous conduct, including luring Plaintiffs to the United States under false pretenses, compelling them to toil under inhumane conditions for extended periods of time, barring them from leaving the premises of Defendants' home, harassing Plaintiffs' family members, threatening to have them incarcerated and deported, physically abusing them, seizing their immigration documents, forcing them to live in unsafe conditions, and refusing to permit them to timely seek necessary medical care.  (Compl. ¶¶ 2–3,

18

11–13, 18–23, 28-30, 36.[5])  All of this conduct was either intentionally aimed at causing Plaintiffs distress or reflects an egregious disregard for the likelihood of causing such distress. (*See* Compl. ¶¶ 50, 138.)  Furthermore, Plaintiffs have alleged that Defendants' extreme and outrageous conduct caused them to "suffer[] severe psychological trauma."  (Compl. ¶ 51; *see also id.* ¶ 139.)

Courts have found allegations of strikingly similar factual circumstances sufficient to state claims for IIED.  For example, in *Guobadia v. Irowa*, 103 F. Supp. 3d 325, 341 (E.D.N.Y. 2015), an IIED claim was allowed to proceed to trial based on evidence that defendants "physically abused the Plaintiff," "kept [the Plaintiff] isolated," and  "threatened to have her arrested or deported if she spoke to people outside the home," resulting in continuing "severe emotional distress."  Defendants cite no authority to support their contention that precise temporal and geographic details are required to plead IIED.  The allegations of Defendants' long pattern of threats and coercion, along with Plaintiffs' resulting emotional pain, are more than sufficient to state a claim.

### H.    Plaintiffs Adequately Pleaded Negligent Infliction of Emotional Distress in Their Fourteenth Claim for Relief.

Defendants' argument that the claim for negligent infliction of emotional distress ("NIED") should be clarified or dismissed also fails.  (D. Mem. at 20–21.)  Defendants ignore the many allegations throughout the Complaint of their long pattern of threats, coercion, and inhumane treatment of Plaintiffs.  Ms. Sulaiman and Ms. Cabilocan allege that they were forced to sleep in a pantry (Compl. ¶¶ 20, 29), were not allowed to leave the apartment unescorted (*id.* ¶¶ 21, 29), were given rotten food to eat (*id.* ¶ 29), were paid an illegally low salary (*id.* ¶¶ 18,

---

[5] The large majority of this conduct is alleged to have occurred within the United States, while Plaintiffs were in Defendants' employ in New York.  Accordingly, Defendants' argument that the IIED claim is subject to dismissal under *Kiobel* (*see* D. Mem. at 20) is without merit.

29), were forced to work illegally long hours, were called "slave" and "animal" (*id.* ¶¶ 20, 29), were slapped if they disobeyed (*id.*), and were subject repeated threats of deportation and blacklisting (*id.* ¶¶ 11–13).  As recounted in the Complaint, Plaintiffs' physical and mental anguish was so great that they were willing to escape the apartment, even though they knew no one in New York and had nowhere to stay.  (*Id.* ¶¶ 34–35.)  *See Franco v. Diaz*, 51 F. Supp. 3d 235, 247-48 (E.D.N.Y. 2014) (sustaining NIED claim where defendants did not dispute in motion to dismiss that a duty was owed to the plaintiff and where allegations were sufficient to conclude that plaintiff feared for physical safety).

To the extent any ambiguities remain, Defendants are free to resolve them through discovery and are free to deny liability to the extent conduct occurred overseas.  The Court should reject their suggestion that the NIED should be clarified or dismissed.

## II.     It Is Unnecessary for Plaintiffs to Re-plead Their Complaint, and No Allegations Should be Stricken as Immaterial or Scandalous.

Motions to strike allegations in a pleading are disfavored.  *Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 336 (S.D.N.Y. 2016).  Allegations should be stricken only when they are so inflammatory as to be "out-of-bounds," *id.*, or where they "have no possible bearing on the subject matter of the litigation."  *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. For Cancer Research*, 15-CV-2044 (AJN), 2016 WL 205445, at *8 (S.D.N.Y. Jan. 15, 2016); *see also Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 731 (S.D.N.Y. 2014).  Indeed, "[i]f there is any doubt whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, and the sufficiency of the allegations left for the adjudication on the merits."  *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, 810 F. Supp. 486, 499-500 (S.D.N.Y. 1992).  To succeed on a motion to strike, a litigant

also must show that leaving the attacked allegations in the pleading will result in prejudice.  *See*

*Williams v. Rosenblatt Sec., Inc.*, 136 F. Supp. 3d 593, 615 (S.D.N.Y. 2015).

Defendants seek to strike allegations in the Complaint regarding the treatment of Ms.

Sulaiman and Ms. Cabilocan by members of the extended Laram family.  (D. Mem. at 21-22.)

These allegations should not be stricken, as they provide critical background information and

context that support the coercive relationship between Defendants and Ms. Sulaiman and Ms.

Cabilocan.  For example, the Complaint alleges that one of the ways in which Defendants

threatened Plaintiffs during Plaintiffs' time in New York was by referring to a worker whom the

Laram family had previously arranged to be blacklisted and warning that Ms. Sulaiman and Ms.

Cabilocan would meet the same fate if they disobeyed Defendants.  (Compl. ¶ 30.)  These threats

go to the heart of several causes of action in the Complaint, including the trafficking claims

(Compl. ¶¶ 54, 61) and the infliction of emotional distress claims (Compl. ¶¶ 137, 143).  *See*

*Restis*, 53 F. Supp. 3d at 731 (denying motion to strike allegations "including extensive

references to offensive Facebook comments, [and] claims of non-parties," as defendants "failed

to show that these allegations have no bearing on Plaintiff's claims, or that Plaintiffs would be

unable to admit any evidence in support of such allegations at trial").

Defendants also seek to strike allegations in paragraphs 4, 20, 29, 31, 32, and 35 of the

Complaint.  (D. Mem. at 23.)  These allegations all concern the egregious and shocking

treatment of Plaintiffs by Defendants.  Defendants claim that these allegations will inflame a

jury, but this cannot be a source of cognizable prejudice because during trial litigants present to

juries evidence, not pleadings.  *See Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944

F. Supp. 240, 250 (S.D.N.Y. 1996) (denying motion to strike on the ground that "[t]his Court

does not allow pleadings to go to a jury" so "[e]ven if the statements are immaterial or

impertinent, they cannot prejudice defendants' case"); *see also Williams*, 136 F. Supp. 3d at 615 (denying motion to strike in part based on failure to show prejudice).

Moreover, other than Defendants' cursory say-so, they provide no basis for concluding that the allegations challenged have no possible bearing on the subject matter at hand.  Several of the challenged allegations are neutral factual statements that advance the narrative of the Complaint.  The allegation concerning Mr. Laram's statement opposing human trafficking in his capacity as a diplomat at the United Nations is relevant to his state of mind, as well as the appropriateness of punitive damages.  (Compl. ¶ 31.)  And the allegations concerning Plaintiffs' escape are relevant to showing the fear and psychological coercion at the heart of their relationship with Defendants, which prevented them from extricating themselves sooner from the trafficking.  (Compl. ¶¶ 32, 35.)  *See Guzman*, 176 F. Supp. 3d at 336 (denying motion to strike allegations concerning defendant's "racist dismissive attitude toward Plaintiff" because it was potentially relevant to a hostile work environment claim).  As to the remaining allegations, they should not be stricken merely because they are narrative statements.  *See Kehr v. Yamaha Motor Corporation, U.S.A.*, 596 F. Supp. 2d 821, 828-29 (S.D.N.Y. 2008) (refusing to strike narrative allegations in the complaint describing a vehicle at issue as "enormously popular" and accusing the defendant of "misleading thousands of innocent buyers and passengers" because the defendant failed to demonstrate that they were irrelevant or unsupported (internal quotation marks omitted)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss, or, in the Alternative, For a More Definitive Statement, and Motion to Strike.

Dated: March 2, 2017                          Respectfully submitted,


By:   /s/Richard F. Levy   
       Richard F. Levy
       Joshua H. Rubin
       Daniel A. Johnson (*pro hac vice*)
       JENNER & BLOCK LLP
       919 Third Avenue
       New York, New York 10022-3908
       Telephone: (212) 891-1600
       Facsimile: (212) 909-0894


       *Attorneys for Plaintiffs*

23